| **SOLICITATION, OFFER, AND AWARD** *(Construction, Alteration, or Repair)* | 1. SOLICITATION NO. DACW64-02-B-0025 | 2. TYPE OF SOLICITATION [X] SEALED BID *(IFB)* [ ] NEGOTIATED *(RFP)* | 3. DATE ISSUED 05/16/02 | PAGE 1 OF PAGES 2 |
|---|---|---|---|---|

**IMPORTANT** - The "offer" section on the reverse must be fully completed by offeror.

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|
| DACW64-02-C-0034 | W45VAK-2078-5777 | 018510 |

| 7. ISSUED BY CODE | 8. ADDRESS OFFER TO |
|---|---|
| USAED, GALVESTON<br>CONTRACTING DIVISION<br>2000 FORT POINT ROAD<br>P. O. BOX 1229<br>GALVESTON, TX 77553-1229 | USAED, GALVESTON<br>CONTRACTING DIVISION<br>2000 FORT POINT ROAD<br>P. O. BOX 1229<br>GALVESTON, TX 77553-1229 |

| 9. FOR INFORMATION CALL: | a. NAME | b. TELEPHONE NO. *(Include area code) (NO COLLECT CALLS)* |
|---|---|---|
| | JACQUELINE B. ADEKANBI | (409) 766-3100 |

**SOLICITATION**

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid and "bidder".

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date)*

Trinty River and Tributaries, Texas in Chambers County, Texas.

Bid Opening will be in room 175.

Commencement, Prosecution, and Completion of Work is in Section 01100.

11. The Contractor shall begin performance * calendar days and complete it within * calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [ ] mandatory [ ] negotiable. *(See* See Section 01100, Para .*)*

| 12a. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12b).* [X] YES [ ] NO | 12b. CALENDAR DAYS 2 (0) |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

a. Sealed offers in original and 0 (zero) ~~copies to~~ perform the work required are due at the place specified in Item 8 ~~by~~ 2:00 pm *(hour)* local time ~~06/17/02~~ 07/18/02 (date). If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

b. An offer guarantee [X] is, [ ] is not required.

c. All offers a· : subject to the (1) work reqiurements, and (2) other provisions and clauses incorporated in the solicitation in full text or by

d. Offers providing less than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

**OFFER** *(Must be fully completed by offeror)*

| | |
|---|---|
| 14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*<br>WEEKS MARINE, INC.<br>304 GAILLE DRIVE<br>COVINGTON, LA 70433 | 15. TELEPHONE NO. *(Include area code)*<br>(985) 875-2500 FAX NO.: (985) 875-2570<br>16. REMITTANCE ADDRESS *(Include only if different than Item 14.)*<br>WEEKS MARINE, INC.<br>4 COMMERCE DRIVE<br>CRANFORD, NEW JERSEY 07016-3598 |
| CODE 1RHV3 FACILITY CODE 189601636 | |

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within ______ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13d. Failure to insert any number means the offeror accepts the minimum in Item 13d.)*

AMOUNTS ▶ **SEE ATTACHED BIDDING SCHEDULE**

18. The offeror agrees to furnish any required performance and payment bonds.

**19. ACKNOWLEDGMENT OF AMENDMENTS**
*(The offeror acknowledges receipt of amendments to the solicitation -- give number and date of each)*

| AMENDMENT NO. | 0001 | 0002 | 0003 | 0004 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE. | 5/28/02 | 5/31/02 | 7/8/02 | 7/16/02 | | | | | | |

| 20a. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)* | 20. SIGNATURE | 20c. OFFER DATE |
|---|---|---|
| ERIC ELLEFSEN, VICE PRESIDENT | [signature] | JULY 18, 2002 |

**AWARD** *(To be completed by Government)*

21. ITEMS ACCEPTED:

0001 thru 0016 (Total Schedule No. 1)

| 22. AMOUNT | 23. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| Estimated $5,065,587.00 | $50,000.00 Available for Payment Under Continuing Contracts Clau: 96X3123. 96413 GCL5FC |

| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ | ITEM | 25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO ☐ 10 U.S.C. 2304(c) ( ) ☐ 41 U.S.C. 253(c) ( ) |
|---|---|---|

| 26. ADMINISTERED BY CODE | 27. PAYMENT WILL BE MADE BY |
|---|---|
| U.S. ARMY CORPS OF ENGINEERS<br>GALVESTON DISTRICT OFFICE<br>P. O. BOX 1229<br>GALVESTON, TEXAS 77553-1229 | USAED, FINANCE CENTER<br>ATTN: CEFC-AO-P<br>5722 INTEGRITY DRIVE<br>MILLINGTON, TN 38054-5000 |

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

| | |
|---|---|
| ☐ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference in or attached to this contract. | ☒ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation is hereby accepted as to the items listed. This award consummates th contract, which consists of (a) the Government solicitation and your offer, and (b) thi contract award. No further contractual document is necessary. |
| 30a. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)* | 31a. NAME OF CONTRACTING OFFICER *(Type or print)*<br>Curtis Cole Jr. |

| 30b. SIGNATURE | 30c. DATE | 31b. UNITED STATES OF AMERICA<br>BY [signature] | 30c. DATE<br>4-SEP-02 |
|---|---|---|---|

STANDARD FORM 1442 (REV. 4-85) BACK

may require, in writing, that the Contractor remove from the work any employee the Contracting Officer deems incompetent, careless, or otherwise objectionable.

52.236-6 SUPERINTENDENCE BY THE CONTRACTOR (APR 1984)

At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the worksite a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

52.236-7 PERMITS AND RESPONSIBILITIES (NOV 1991)

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

52.236-8 OTHER CONTRACTS (APR 1984)

The Government may undertake or award other contracts for additional work at or near the site of the work under this contract. The Contractor shall fully cooperate with the other contractors and with Government employees and shall carefully adapt scheduling and performing the work under this contract to accommodate the additional work, heeding any direction that may be provided by the Contracting Officer. The Contractor shall not commit or permit any act that will interfere with the performance of work by any other contractor or by Government employees.

52.236-9 PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984)

(a) The Contractor shall preserve and protect all structures, equipment, and vegetation (such as trees, shrubs, and grass) on or adjacent to the work site, which are not to be removed and which do not unreasonably interfere with the work required under this contract. The Contractor shall only remove trees when specifically authorized to do so, and shall avoid damaging vegetation that will remain in place. If any limbs or branches of trees are broken during contract performance, or by the careless operation of equipment, or by workmen, the Contractor shall trim those limbs or branches with a clean cut and paint the cut with a tree-pruning compound as directed by the Contracting Officer.

(b) The Contractor shall protect from damage all existing improvements and utilities

(1) at or near the work site, and

(2) on adjacent property of a third party, the locations of which are made known to or should be known by the Contractor. The Contractor shall repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work. If the Contractor fails or refuses to repair the damage promptly, the Contracting Officer may have the necessary work performed and charge the cost to the Contractor.

52.236-10 OPERATIONS AND STORAGE AREAS (APR 1984)

(a) The Contractor shall confine all operations (including storage of materials) on Government premises to areas authorized or approved by the Contracting Officer. The Contractor shall hold and save the Government, its officers and agents, free and harmless from liability of any nature occasioned by the Contractor's performance.

(b) Temporary buildings (e.g., storage sheds, shops, offices) and utilities may be erected by the Contractor only with the approval of the Contracting Officer and shall be built with labor and materials furnished by the Contractor without expense to the Government. The temporary buildings and utilities shall remain the property of the Contractor and shall be removed by the Contractor at its expense upon completion of the work. With the written consent of the Contracting Officer, the buildings and utilities may be abandoned and need not be removed.

(c) The Contractor shall, under regulations prescribed by the Contracting Officer, use only established roadways, or use temporary roadways constructed by the Contractor when and as authorized by the Contracting Officer. When materials are transported in prosecuting the work, vehicles shall not be loaded beyond the loading capacity recommended by the manufacturer of the vehicle or prescribed by any Federal, State, or local law or regulation. When it is necessary to cross curbs or sidewalks, the Contractor shall protect them from damage. The Contractor shall repair or pay for the repair of any damaged curbs, sidewalks, or roads.

52.236-11 USE AND POSSESSION PRIOR TO COMPLETION (APR 1984)

(a) The Government shall have the right to take possession of or use any completed or partially completed part of the work. Before taking possession of or using any work, the Contracting Officer shall furnish the Contractor a list of items of work remaining to be performed or corrected on those portions of the work that the Government intends to take possession of or use. However, failure of the Contracting Officer to list any item of work shall not relieve the Contractor of responsibility for complying with the terms of the contract. The Government's possession or use shall not be deemed an acceptance of any work under the contract.

(b) While the Government has such possession or use, the Contractor shall be relieved of the responsibility for the loss of or damage to the work resulting from the Government's possession or use, notwithstanding the terms of the clause in this contract entitled "Permits and Responsibilities." If prior possession or use by the Government delays the progress of the work or causes additional expense to the Contractor, an equitable adjustment shall be made in the contract price or the time of completion, and the contract shall be modified in writing accordingly.

52.236-12 CLEANING UP (APR 1984)

The Contractor shall at all times keep the work area, including storage areas, free from accumulations of waste materials. Before completing the work, the Contractor shall remove from the work and premises any rubbish, tools, scaffolding, equipment, and materials that are not the property of the Government. Upon completing the work, the Contractor shall leave the work area in a clean, neat, and orderly condition satisfactory to the Contracting Officer.

52.236-13 ACCIDENT PREVENTION (NOV 1991)

(a) The Contractor shall provide and maintain work environments and procedures which will

(1) safeguard the public and Government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities;

(2) avoid interruptions of Government operations and delays in project completion dates; and

(3) control costs in the performance of this contract.

(b) For these purposes on contracts for construction or dismantling, demolition, or removal of improvements, the Contractor shall-

(1) Provide appropriate safety barricades, signs, and signal lights;

(2) Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910; and

(3) Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for the purposes are taken.

(c) If this contract is for construction or dismantling, demolition or removal of improvements with any Department of Defense agency or component, the Contractor shall comply with all pertinent provisions of the latest version of U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1, in effect on the date of the solicitation.

(d) Whenever the Contracting Officer becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, the Contracting Officer shall notify the Contractor orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to the Contractor or the Contractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Contractor shall not be entitled to any equitable adjustment of the contract price or extension of the performance schedule on any stop work order issued under this clause.

(e) The Contractor shall insert this clause, including this paragraph (e), with appropriate changes in the designation of the parties, in subcontracts.

INVITATION NO. DACW64-02-B-0025

# TRINITY RIVER AND TRIBUTARIES, TEXAS
# CHANNEL TO LIBERTY AT SMITH POINT
# IN CHAMBERS COUNTY, TEXAS

## SPECIFICATIONS

## FOR

## DREDGING AND MARSH CREATION

MAY 2002

DEPARTMENT OF THE ARMY
GALVESTON DISTRICT, CORPS OF ENGINEERS
P.O. BOX 1229
GALVESTON, TEXAS

TABLE OF CONTENTS

**TRINITY RIVER AND TRIBUTARIES, TEXAS**
**CHANNEL TO LIBERTY AT SMITH POINT**
**IN CHAMBERS COUNTY, TEXAS**
**DREDGING AND MARSH CREATION**

**SECTION 00800 - SPECIAL CONTRACT REQUIREMENTS, STANDARD**


| PARAGRAPH | TITLE | PAGE NOS. |
|---|---|---|
| 1. | CONTRACT DRAWINGS AND SPECIFICATIONS (AUG 2000) (DFARS 252.236-7001) | 00800-01 |
| 2. | PHYSICAL DATA (APR 1984) (FAR 52.236-4) | 00800-02 |
| 3. | PAYMENT FOR MOBILIZATION AND DEMOBILIZATION (DEC 1991) (DFARS 252.236-7004) | 00800-02 |
| 4. | LIQUIDATED DAMAGES - CONSTRUCTION (SEP 2000) (FAR 52.211-12) | 00800-03 |
| 5. | QUANTITY SURVEYS (APR 1984) (FAR 52.236-16) | 00800-03 |
| 6. | PERFORMANCE OF WORK BY CONTRACTOR (APR 1984) (FAR 52.236-1) | 00800-04 |
| 7. | CONTINUING CONTRACTS (MAR 1995) (EFARS 52.232-5001) | 00800-04 |
| 8. | OBSTRUCTION OF NAVIGABLE WATERWAYS (DEC 1991) (DFARS 252.236-7002) | 00800-05 |
| 9. | EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (MAR 1995) (EFARS 52.231-5000) | 00800-06 |

**SECTION TABLE OF CONTENTS**

**GENERAL REQUIREMENTS**

**SECTION 01355 - ENVIRONMENTAL PROTECTION**


| PARAGRAPH | TITLE | PAGE NOS. |
|---|---|---|
| **PART 1 - GENERAL** | | |
| 1.1 | SCOPE OF WORK | 01355-01 |
| 1.2 | QUALITY CONTROL | 01355-01 |
| 1.3 | SUBMITTALS | 01355-01 |
| 1.4 | SUBCONTRACTORS | 01355-02 |
| 1.5 | NOTIFICATION OF NON-COMPLIANCE | 01355-02 |
| 1.6 | PAYMENT | 01355-02 |
| **PART 2 - PRODUCTS (NOT APPLICABLE)** | | |
| **PART 3 - EXECUTION** | | |
| 3.1 | PROTECTION OF ENVIRONMENTAL RESOURCES | 01355-02 |
| 3.2 | PRESERVATION AND RECOVERY OF HISTORICAL, ARCHEOLOGICAL AND CULTURAL RESOURCES | 01355-03 |
| 3.3 | PROTECTION OF WATER RESOURCES | 01355-03 |
| 3.4 | PROTECTION OF FISH AND WILDLIFE RESOURCES | 01355-04 |
| 3.5 | PROTECTION OF AIR RESOURCES | 01355-04 |
| 3.6 | PROTECTION FROM SOUND INTRUSIONS | 01355-04 |
| 3.7 | POST CONSTRUCTION CLEAN-UP | 01355-05 |
| 3.8 | RESTORATION OF LANDSCAPE DAMAGE | 01355-05 |
| 3.9 | MAINTENANCE OF POLLUTION CONTROL FACILITIES | 01355-05 |
| 3.10 | TRAINING OF CONTRACTOR PERSONNEL IN POLLUTION CONTROL | 01355-05 |
| 3.11 | DREDGING | 01355-05 |

## SECTION 01355 - ENVIRONMENT PROTECTION

### PART 1 - GENERAL

**1.1 SCOPE OF WORK.** This Section covers prevention of environmental pollution and damage as the result of construction operations under this contract and for those measures set forth in other Sections of these specifications. For the purpose of this specification, environmental pollution and damage is defined as the presence of chemical, physical, or biological elements or agents which adversely affect human health or welfare; unfavorably alter ecological balances of importance to human life; affect other species of importance to man; or degrade the utility of the environment for aesthetic, cultural and historical purposes. The control of environmental pollution and damage requires consideration of air, water, and land, and includes management of visual aesthetics, noise, solid waste, radiant energy and radioactive materials, as well as other pollutants.

**1.2 QUALITY CONTROL.** The Contractor shall establish and maintain Quality Control for environmental protection of the items set forth herein. The Contractor shall record on daily reports problems in complying with laws, regulations, and ordinances, and the corrective action taken.

**1.3 SUBMITTALS.** The Contractor shall submit an Environmental Protection Plan in accordance with provisions as herein specified.

1.3.1 Environmental Protection Plan shall include but not be limited to the following:

(1) A list of Federal, State and local laws, regulations, and permits concerning environmental protection, pollution control and abatement that are applicable to the Contractor's proposed operations and the requirements imposed by those laws, regulations and permits.

(2) Methods for Protection of Features to be preserved within authorized work areas. The Contractor shall prepare a listing of methods to protect resources needing protection, including trees, shrubs, vines, grasses and ground cover, landscape features, air and water quality, fish and wildlife, soil, historical, archeological, and cultural resources.

(3) Procedures to be Implemented to provide the required environmental protection and to comply with the applicable laws and regulations. The Contractor shall set out the procedures to be

followed to correct pollution of the environment due to accident, natural causes or failure to follow the procedures set out in accordance with the Environmental Protection Plan.

1.3.2 Implementation. Within 15 days after receipt of Notice to Proceed, the Contractor shall submit in writing the above Environmental Protection Plan. Approval of the Contractor's plan will not relieve the Contractor of its responsibility for adequate and continuing control of pollutants and other environmental protection measures.

**1.4 SUBCONTRACTORS.** Assurance of compliance with this Section by subcontractors will be the responsibility of the Contractor.

**1.5 NOTIFICATION OF NON-COMPLIANCE.** The Contracting Officer will notify the Contractor in writing of observed non-compliance with the aforementioned Federal, State, or local laws or regulations, permits and other elements of the Contractor's Environmental Protection Plan. The Contractor shall, after receipt of such notice, inform the Contracting Officer of proposed corrective action and take such action as may be approved. If the Contractor fails to comply promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. No time extensions shall be granted or costs or damages allowed to the Contractor for such suspension.

**1.6 PAYMENT.** No separate payment or direct payment will be made for the cost of the work covered under this Section and the work will be considered a subsidiary obligation of the Contractor.

## PART 2 - PRODUCTS (Not Applicable)

## PART 3 - EXECUTION

**3.1 PROTECTION OF ENVIRONMENTAL RESOURCES.** The environmental resources within the project boundaries and those affected outside the limits of permanent work under this contract shall be protected during the entire period of this contract. The Contractor shall confine its activities to areas defined by the drawings and specifications. Environmental protection shall be as stated in the following subparagraphs.

3.1.1 Protection of Land Resources. Prior to the beginning of construction, the Contractor shall identify the land resources to be preserved within the Contractor's work area. The Contractor shall not remove, cut, deface, injure, or destroy land resources including trees, shrubs, vines, grasses, top soil, and land forms without special permission from the Contracting Officer. Ropes, cables, or guys shall not be fastened to or attached to trees for anchorage unless specifically authorized. Where such special emergency use is permitted, the Contractor shall provide effective protection for land and vegetation resources as defined in the following subparagraphs.

3.1.1.1 Protection of Landscape. Trees, shrubs, vines, grasses, land forms, and other landscape features identified by the Contracting Officer to be preserved for removal by others shall be clearly identified by marking, fencing, or wrapping with boards, or other approved techniques.

3.1.2 Location of Field Offices, Storage, and Other Contractor Facilities. The Contractor's field offices, staging areas, stockpile storage, and temporary buildings shall be placed in approved areas. Temporary movement or relocation of Contractor facilities shall be made only on approval.

3.1.3 Temporary Excavations and Embankments for plant or work areas shall be controlled to protect adjacent areas from despoilment.

3.1.4 Placement of Solid Wastes. Solid wastes, excluding clearing debris, shall be placed in containers which are emptied on a regular schedule. Handling and disposal shall be conducted to prevent contamination.

3.1.5 Placement of Solid Waste by Removal from Government Property. The Contractor shall transport solid waste off Government property and dispose it in compliance with Federal, State, and local requirements for solid waste placement.

3.1.6 Placement of Discarded Materials. Discarded materials, other than those which can be included in the solid waste category, will be handled as directed.

3.1.7 Sanitation Facilities. The Contractor shall provide and operate sanitation facilities that will adequately treat or dispose sanitary wastes in conformance with Federal, State, and local health regulations.

**3.2 PRESERVATION AND RECOVERY OF HISTORICAL, ARCHEOLOGICAL, AND CULTURAL RESOURCES.** Existing historical, archeological, and cultural resources within the Contractor's work area will be so designated by the Contracting Officer and precautions taken to preserve such resources as they existed at the time they were pointed out to the Contractor. The Contractor shall install protection for these resources so designated on the drawings and shall be responsible for their preservation during this contract. If during the dredging and placement activities the Contractor encounters archeological sites or shipwrecks of historical or archeological value, it shall cease work immediately pursuant to the CONTRACT CLAUSE entitled SUSPENSION OF WORK and so notify the Contracting Officer by the fastest available means. After investigation by the Contracting Officer, the Contractor will be instructed on the procedures to follow and if an unreasonable delay is incurred or the work is changed, the contract will be modified accordingly.

**3.3 PROTECTION OF WATER RESOURCES.** The Contractor shall keep construction activities under surveillance, management, and control to avoid pollution of surface and ground waters. Special management techniques, as set out below, shall be implemented to control water pollution by the listed construction activities which are included in this contract.

**3.4 PROTECTION OF FISH AND WILDLIFE RESOURCES.** The Contractor shall keep construction activities under surveillance, management, and control to minimize interference with, disturbance to, and damage of fish and wildlife. Species that require specific attention along with measures for their protection will be listed by the Contractor prior to beginning of construction operations.

**3.5 PROTECTION OF AIR RESOURCES.** The Contractor shall keep construction activities under surveillance, management, and control to minimize pollution of air resources. Activities, equipment, processes, and work operated or performed by the Contractor in accomplishing the specified construction shall be in strict accordance with the State of Texas Clean Air Act implemented in 1967, and the Federal emission and performance laws and standards. Ambient Air Quality Standards set by the Environmental Protection Agency shall be maintained for the construction operations and activities specified herein. Special management techniques as set out below shall be implemented to control air pollution by the construction activities included in the contract.

3.5.1 Particulates. Dust particles, aerosols, and gaseous byproducts from construction activities, processing and preparation of materials, such as from asphaltic batch plants, shall be constantly controlled, including weekends, holidays, and hours when work is not in progress.

3.5.1.1 Particulates: Control. The Contractor shall maintain excavations, stockpiles, haul roads, permanent and temporary access roads, plant sites, waste areas, borrow areas, and other work areas within or outside the project boundaries free from particulates which may cause the air pollution standards mentioned in Subparagraph: Protection of Air Resources above, to be exceeded or which may cause a hazard or a nuisance. Sprinkling, chemical treatment of an approved type, light bituminous treatment, baghouse, scrubbers, electrostatic precipitators, or other methods will be permitted to control particulates in the work area. Sprinkling, to be efficient, shall be repeated at intervals that will keep the disturbed area damp. The Contractor shall have sufficient reliable equipment available to accomplish this task. Particulate control shall be performed as the work proceeds and whenever a particulate nuisance or hazard occurs.

3.5.2 Hydrocarbons and Carbon Monoxide Emissions from equipment shall be controlled to Federal and State allowable limits.

3.5.3 Odors shall be constantly controlled for construction activities, processing, and preparation of materials.

3.5.4 Monitoring of Air Quality shall be the responsibility of the Contractor. Air areas affected by the construction activities shall be monitored by the Contractor.

**3.6 PROTECTION FROM SOUND INTRUSIONS.** The Contractor shall keep construction activities under surveillance and control to minimize damage to the environment by noise.

**3.7 POST CONSTRUCTION CLEAN-UP.** The Contractor shall clean areas used for construction.

**3.8 RESTORATION OF LANDSCAPE DAMAGE.** The Contractor shall restore landscape features damaged or destroyed during construction operations outside the limits of the approved work areas. Restoration shall be in accordance with the Plan submitted for approval. This work will be accomplished at the Contractor's expense.

**3.9 MAINTENANCE OF POLLUTION CONTROL FACILITIES.** The Contractor shall maintain constructed facilities and portable pollution control devices for the duration of the contract or for that length of time construction activities create the particular pollutant.

**3.10 TRAINING OF CONTRACTOR PERSONNEL IN POLLUTION CONTROL.** The Contractor shall train its personnel in the phases of environmental protection. The training shall include methods of detecting and avoiding pollution, familiarization with pollution standards, both statutory and contractual, and installation and care of facilities including vegetative covers, and instruments required for monitoring purposes, to ensure adequate and continuous environmental pollution control.

**3.11 DREDGING.**

3.11.1 The Contractor shall comply with the following requirements to prevent degradation of the human environment.

3.11.1.1 The Contractor shall comply with Federal, State and local laws, rules and regulations governing the placement of materials and wastes in navigable waters including approval of the appropriate State Water Quality Board for the discharge of materials and wastes in the navigable waters within its jurisdiction, and including the provisions of 33 USC 1342.

3.11.1.2 The Contractor shall provide and operate sanitation facilities that will adequately treat or dispose sanitary wastes to conform with Federal, State, and local health regulations.

3.11.1.3 The Contractor shall comply with Federal, State, and local rules and regulations governing the control of air pollutants including those governing the burning of debris or wastes.

3.11.1.4 The Contractor shall perform its construction and dredging operations using a method that will reduce turbidity to the lowest practicable level using the normal accepted dredging practices.

3.11.1.5 The Contractor shall take precautions in handling or storage of hazardous materials to prevent discharges or spillages that can result in degradation of the water quality.

3.11.1.6 When depositing material in confined areas, the Contractor shall conduct its operations so as to reduce conditions conducive to the breeding of mosquitoes, flies, and other disease-bearing insects and pests and to prevent or control the release of obnoxious odors and gases deleterious to human life and property including treatment of these gases as directed.

3.11.1.7 The Contractor shall exercise precaution to prevent dredged material and dredge effluent from flowing into areas or waterways and ditches not designated for the deposit of dredged material or the flow of effluent runoff as required by the SECTION entitled DREDGING.

--oOo--

**SECTION TABLE OF CONTENTS**

**SITE WORK**

**SECTION 02482 - DREDGING**


| PARAGRAPH | TITLE | PAGE NOS. |
|---|---|---|
| **PART 1 - GENERAL** | | |
| 1.1 | SCOPE OF WORK | 02482-01 |
| 1.2 | ARCHEOLOGICAL SITES AND SHIPWRECKS | 02482-01 |
| 1.3 | LOCATION | 02482-01 |
| 1.4 | OBSTRUCTION OF CHANNEL | 02482-01 |
| 1.5 | TEMPORARY REMOVAL OF AIDS TO NAVIGATION | 02482-02 |
| 1.6 | NOTIFICATION PRIOR TO COMMENCEMENT OF DREDGING OPERATIONS | 02482-02 |
| 1.7 | ENVIRONMENTAL CONTROL MEASURES | 02482-02 |
| 1.8 | UTILITIES ACROSS THE LIMITS OF DREDGING | 02482-02 |
| 1.9 | WORK COVERED BY THE CONTRACT PRICE | 02482-02 |
| 1.10 | CHARACTER OF MATERIALS | 02482-03 |
| 1.11 | MEASUREMENT | 02482-03 |
| 1.12 | PAYMENT | 02482-04 |
| **PART 2 - PRODUCTS** | | |
| 2.1 | BRIDGE-TO-BRIDGE RADIO-TELEPHONE EQUIPMENT | 02482-04 |
| **PART 3 - EXECUTION** | | |
| 3.1 | ESTIMATED QUANTITIES | 02482-04 |
| 3.2 | SECTIONS | 02482-05 |
| 3.3 | ORDER OF WORK | 02482-05 |
| 3.4 | PLACEMENT OF EXCAVATED MATERIAL | 02482-06 |
| 3.5 | OVERDEPTH, SIDE AND END SLOPES | 02482-11 |
| 3.6 | HOUSTON-GALVESTON VESSEL TRAFFIC SERVICE AREA | 02482-12 |
| 3.7 | REPORTING REQUIREMENT | 02482-13 |

## SECTION 02482 - DREDGING

### PART 1 - GENERAL

**1.1 SCOPE OF WORK.**

1.1.1 Work to be Done. The work in this Section consists of furnishing plant, labor, materials, and equipment and performing the work required by these specifications, schedules, and drawings forming parts thereof for dredging this project as follows:

| Required Depth Below MLT (Feet) | Required Width (Feet) | From Station | To Station | Distance Between Stations (Feet) |
|---|---|---|---|---|
| **TRINITY RIVER CHANNEL TO LIBERTY AT SMITH POINT** | | | | |
| 9 | 150 | 240+00 | 390+00 | 15,000 |

1.1.2 The varying bottom width(s) and lengths to be dredged are shown on the drawings referred to in the SPECIAL CONTRACT REQUIREMENTS, STANDARD CLAUSE entitled CONTRACT DRAWINGS AND SPECIFICATIONS. The Contractor shall remove sufficient material to provide the limiting side and end slopes specified in the Paragraph: OVERDEPTH, SIDE AND END SLOPES, below.

**1.2 ARCHEOLOGICAL SITES AND SHIPWRECKS.** If during the dredging and placement operations the Contractor encounters archeological sites or shipwrecks of a historical nature, work shall cease immediately pursuant to the CONTRACT CLAUSE entitled SUSPENSION OF WORK and the Contracting Officer shall be notified by the fastest available means. After investigation by the Contracting Officer, the Contractor will be instructed on how to proceed; and if a delay of more than 14 calendar days is incurred or the work is changed, the contract will be modified accordingly.

**1.3 LOCATION.** The reach to be dredged is approximately 19 miles south of the city of Anahuac, Texas and 19 miles north of the City of Galveston, Texas, located on the east side of Galveston Bay in Chambers County, Texas

**1.4 OBSTRUCTION OF CHANNEL.** The Government will not undertake to keep the Channel free from vessels or other obstructions, except to the extent of the regulations, if any, as may be prescribed by the Secretary of the Army, in accordance with the provisions of Section 7 of the River and Harbor Act approved 8 August 1917. The Contractor shall conduct the work using a method that will obstruct navigation as

little as possible, and if the Contractor's plant does obstruct the Channel and makes the passage of vessels difficult or endangers them, the plant shall be promptly moved on the approach of a vessel as far as may be necessary to afford a practicable passage. Upon completion of the work, the Contractor shall promptly remove the plant, including ranges, buoys, piles, and other marks placed under this contract.

**1.5 TEMPORARY REMOVAL OF AIDS TO NAVIGATION.** The temporary removal or changes in locations of channel markers may be required to facilitate dredging operations. The Contractor shall notify the Contracting Officer at least 21 days prior to the date that the removal or change in location of channel markers will be required so the U.S. Coast Guard can perform the work and so navigation interests may be informed sufficiently in advance of the proposed removal or change in location.

**1.6 NOTIFICATION PRIOR TO COMMENCEMENT OF DREDGING OPERATIONS.** The Contractor shall notify the Area Engineer at the Bay Area Office, in writing, at least 10 days prior to commencement of dredging operations and the location or locations at which a dredge or dredges will be placed on the work. This information is required in addition to the progress charts and schedules provided for in the CONTRACT CLAUSE entitled SCHEDULE FOR CONSTRUCTION CONTRACTS.

**1.7 ENVIRONMENTAL CONTROL MEASURES.** The Contractor shall comply with the requirements of the SECTION entitled ENVIRONMENT PROTECTION to prevent degradation of the human environment.

**1.8 UTILITIES ACROSS THE LIMITS OF DREDGING.** No known pipelines cross the area to be dredged.

**1.9 WORK COVERED BY THE CONTRACT PRICE.**

1.9.1 Mobilization and Demobilization. The contract lump sum price for "Mobilization and Demobilization" shall include the costs in connection with mobilization and demobilization of the plant necessary to perform work under the various bid items. The contract price shall include transportation and other costs incidental to delivery of the plant and other equipment to the general work area in condition ready for operation and, after the completion of the work, for removal of the plant and equipment from the work sites.

1.9.2 Dredging. The contract price per cubic yard for "Dredging (Section 2a)" and "Dredging (Sections 1, 2b, 3 thru 6)" shall include the cost of removal and placement of the material as specified in Paragraphs: CHARACTER OF MATERIALS and PLACEMENT OF EXCAVATED MATERIAL below.

1.9.3 Pipelines. The contract lump sum price for "Pipelines" shall include the cost to place, remove, and handle pipelines to and at the Placement Areas, for procurement of materials, and for construction of ramps or installation of culvert pipes which may be necessary in connection with placing pipelines.

**1.10 CHARACTER OF MATERIALS.**

1.10.1 Material. The material to be removed to restore the depths within the limits specified in the Paragraph: SCOPE OF WORK, above, is composed primarily of shoals of oyster shell that have accumulated over a period of time; however, some oyster shell and virgin material may be encountered in the allowable overdepth and side and end slope dredging. Bidders are expected to examine the site of the work and after investigation, decide for themselves the character of the materials.

1.10.2 Debris. Other materials, including scrap, rope, wire cable, snags, and stumps may be encountered in the specific limits of required dredging and overdepth dredging. No separate payment will be made for removal and disposal of this debris.

**1.11 MEASUREMENT**

1.11.1 Dredging. The total amount of material removed and to be paid for shall be measured by the cubic yard in place. The measurement shall be made by computing the volume between the bottom surface shown by fathometer soundings of the last survey made before dredging and the bottom surface shown by the fathometer soundings of a survey made as soon as practicable after the entire work specified in the Paragraph: SECTIONS below, has been completed and included within the limits of the overdepth and side and end slopes specified in the Subparagraph: Table of Allowable Overdepth, Side, and End Slopes below, less deductions that may be required for misplaced material specified in the Paragraph: PLACEMENT OF EXCAVATED MATERIAL below.

1.11.2 Electronic Positioning. In using electronic positioning the Government will make a corrective adjustment, if applicable, in the volume computation process to compensate for the repeatability tolerance of the electronic positioning equipment, between "before-dredging" and "after-dredging" surveys. The amount of this adjustment will be limited to a shift of plus or minus 3 meters on an azimuth from the baseline normal to the centerline of the cut, of the "after-dredging" survey with respect to the "before-dredging" survey. Adjustments made in "after-dredging" cross sections will also result in a similar adjustment to the "before-dredging" cross sections in the area not dredged. The horizontal control points shown are the control points the Government will use to perform electronic surveys on the Waterway. The Government does not guarantee permanent access to these control points, therefore, it may be necessary for the Contractor to establish its own network of survey points from these survey points or from other U.S. Coast and Geodetic Survey (USCGS) monuments. The location and description of the horizontal control points which the Government plans to use to perform electronic surveys are available at the Bay Area Office. The Contractor shall be responsible for establishing its own reference line to conduct hydrographic surveys and dredging operations if electronic positioning equipment is not used.

1.11.3 Drawings. The drawings already prepared as specified in the SPECIAL CONTRACT REQUIREMENTS, STANDARD CLAUSE entitled CONTRACT DRAWINGS AND SPECIFICATIONS represent conditions existing as of the date of their preparation (average existing conditions). However, to reflect anticipated (shoaling) (scour) occurring

between the dates of preparation of the drawings and the dates of the "before-dredging" sections, the estimated dredging quantities specified in the Bidding Schedule have been adjusted accordingly. The depths and elevations shown thereon will be verified and corrected by fathometer soundings taken by the Government before dredging. Determination of quantities removed and the deductions made therefrom to determine quantities by in-place measurement to be paid for in the area specified, after having once been made will not be reopened, except on evidence of collusion, fraud, or obvious error.

**1.12 PAYMENT.**

1.12.1 Mobilization and Demobilization. Payment for this item will be made pursuant to the conditions of the SPECIAL CONTRACT REQUIREMENTS, STANDARD CLAUSE entitled PAYMENT FOR MOBILIZATION AND DEMOBILIZATION.

1.12.2 Partial Payments. Monthly partial payments for "Dredging" will be based on approximate quantities determined by fathometer soundings or sweepings taken behind the dredge.

1.12.3 Pipelines. Monthly partial payments for "Pipelines" will be based on estimates of the work completed during the period up to 80 percent of the contract price; the remaining 20 percent will be paid in the first monthly partial payment after removal of the pipeline and final clean-up of the pipeline route.

1.12.4 Maintenance. Costs associated with maintaining the cover dikes and proper elevations of the geotextile tubes containment structures during dredging and material placement in Beneficial Use Site No. 2 and other required maintenance of containment levees or structures at the other Beneficial Use Sites shall be included in the contract unit price per cubic yard for "Dredging Section 2a" and "Dredging, Sections 1, 2b, and 3 through 6."

## PART 2 - PRODUCTS

**2.1 BRIDGE-TO-BRIDGE RADIOTELEPHONE EQUIPMENT.** Dredge and self-propelled attendant floating plant shall be radiotelephone equipped to comply with the provisions of the Vessel Bridge-to-Bridge Radiotelephone Act (Public Law 92-63). This will require, as a minimum, the radiotelephone equipment capable of transmitting and receiving on 156.65 MHZ (Channel 13). Multi-channel equipment will also require 156.8 MHZ (Channel 16). Dredge tugs and tenders will be considered towing vessels within the meaning of the Act.

## PART 3 - EXECUTION

**3.1 ESTIMATED QUANTITIES.**

3.1.1 Required Dredging Prism. The total estimated quantity of material necessary to be removed from the required dredging prism, exclusive of allowable overdepth, to complete the work specified in the Paragraph: SCOPE OF WORK above, is

637,300 cubic yards in-place measurement, including anticipated shoaling occurring prior to the dates of the "before-dredging" sections.

3.1.2 Overdepth. The maximum amount of allowable overdepth dredging is estimated to be 166,400 cubic yards, in-place measurement, including anticipated shoaling occurring prior to the dates of the "before-dredging" sections.

3.1.3 Estimated Quantities. Within the limit of available funds, the Contractor will be required to excavate the entire quantity of material necessary to complete the work specified in the Paragraph: SCOPE OF WORK above, be it more or less than the amounts above estimated. The work is to be done in accordance with this contract and at the contract price or prices, subject to the provisions of the NON-REGULATED SPECIAL CONTRACT REQUIREMENTS CLAUSE entitled VARIATIONS IN ESTIMATED QUANTITIES - DREDGING.

**3.2 SECTIONS.** For the purpose of acceptance, the dredging work in the Bidding Schedule are divided into Sections, as follows:

| Section No. | From Station | To Station | Length of Section (Feet) | (1)(2) Prescribed Depth (CY) | (2) Allowable Overdepth (CY) | (2) Total Estimated (CY) |
|---|---|---|---|---|---|---|
| 1 | 240+00 | 271+00 | 3,100 | 116,800 | 34,400 | 151,200 |
| 2a | 271+00 | 288+00 | 1,700* | 53,800 | 0 | 53,800 |
| 2b | 271+00 | 288+00 | 1,700* | 19,000 | 18,900 | 37,900 |
| 3 | 288+00 | 310+00 | 2,200 | 69,100 | 24,400 | 93,500 |
| 4 | 310+00 | 340+00 | 3,000 | 140,400 | 33,200 | 173,600 |
| 5 | 340+00 | 370+00 | 3,000 | 139,700 | 33,300 | 173,000 |
| 6 | 370+00 | 390+00 | 2,000 | 98,500 | 22,200 | 120,700 |
| **TOTALS** | | | **15,000*** | **637,300** | **166,400** | **803,700** |

(1) The term "prescribed depth" is synonymous with the term "required depth" and "required dredging prism" used elsewhere in these specifications.

(2) Includes anticipated shoaling.

* Section 2a and Section 2b both extend from Station 271+00 to Station 288+00. Section 2a has a required depth of (-)7 feet MLT with no allowable overdepth. Section 2b has a required depth of (-)9 feet MLT plus 2 feet allowable overdepth.

**3.3 ORDER OF WORK.** The order of work is at the discretion of the Contractor with the exception of the following:

(1) Section 2a, Station 271+00 to Station 288+00 shall be dredged to the required depth of (-)7 feet MLT and shall be completed and accepted prior to commencing to dredge Section 2b, Station 271+00 to Station 288+00 from (-)7 feet MLT to the required depth of (-)9 feet MLT and the 2-foot allowable overdepth.

(2) Dredged material shall be placed in accordance with Subparagraph: Designated Placement Areas and Order of Placement below.

### 3.4 PLACEMENT OF EXCAVATED MATERIAL

3.4.1 General. The Contractor shall inspect the proposed Placement Area to ensure that using the area for placement operations will not place the Contractor in violation of the applicable Federal, State, or local statutes concerning fish and wildlife. Particular statutes that the Contractor shall consider include, but are not limited to, are the Federal Migratory Bird Treaty Act and the Endangered Species Act of 1973. The material excavated shall be transported and deposited in the Placement Areas shown. Except as otherwise noted, material shall not be deposited or allowed to flow into project channels, a bayou or stream tributary to the Waterway, an existing drainage outlet ditch, canal, water intake, or outlet facility, nor shall materials be allowed to flow onto improved areas including highways and roads in or adjacent to the Placement Areas. In the event a channel or facility becomes shoaled as a result of the dredging or placement operations, the Contractor shall promptly remove these shoals and the material shall be placed in the designated Placement Areas. Dragging or washing operations to remove the shoals will not be permitted. Holes dug on the banks for deadmen or anchorage shall be filled. The Contractor shall adequately inspect placement operations in the Placement Areas daily to reduce the possibility of accidental breaching of levees and spillway with resulting spillage of dredged materials outside the Areas. If levee failures occur while materials are being pumped into the Placement Areas, dredging operations shall be stopped immediately, and the deposit of material in the Areas shall not be resumed until the confining structures have been restored to an approved condition. Materials shall be deposited so that no water is impounded and natural drainage is not obstructed. Once placement operations are completed in a confined area for which the Placement Area is being used, the boards on the spillway of that Placement Area shall be removed at a proper rate to allow drainage of the Area. Every effort has been made to give pertinent details on the location of utility pipelines, structures, and other facilities which may be encountered in performing the levee and spillway work. The data shown are substantially correct. However, the Contractor shall investigate existing conditions and satisfy itself as to the existence of additional utilities or other improvements which may interfere with the work herein specified. In confined areas, levee and other containment structures spillway work required shall be completed and accepted prior to placement operations in that Area. Confined areas shall be maintained in operational condition until completion and acceptance of the work under this contract, unless otherwise specified herein. The SPECIAL CONTRACT REQUIREMENTS, STANDARD CLAUSE entitled DAMAGE TO WORK is only applicable to damage of levees and other non-dredging items.

3.4.2 Designated Placement Areas and Order of Placement. Designated Placement Areas for this contract include Beneficial Use Site (BUS) No. 1, Smith Point Island Enhancement; BUS No. 2, New Marsh Restoration Area; BUS No.3, an unnamed island in the vicinity of Vingt-et-un Island; and BUS No. 4, a new Oyster Reef Pad. The Order of Placement into the Placement Areas shall be as elected by the Contractor, as long as the placement requirements for the various materials specified below are accomplished. The Contractor shall ensure that sufficient pipeline is available at the

site, and in place throughout this contract, so fine-grained materials can be directed to BUS No. 2, when required, as specified below. The order of placement into the BUS No. 2 is specified below.

3.4.2.1 Beneficial Use Site No. 1, Smith Point Island Enhancement. This area shall be used to place dredged materials from Dredging Sections Nos. 1 and 2b. After completion of the rock breakwater, the Contractor shall place an approved silt barrier on the interior slope of the breakwater to prevent migration of material through the rock. The barrier shall be initially placed adjacent to the discharge point and progressively extended along the breakwater as the discharge point is moved, to accomplish the required prevention of material migration through the dike. The barrier material shall be composed of an approved, impermeable, or semi-impermeable biodegradable material. Loose portions of the barrier shall be left in place. Material dredged from channel dredging Sections Nos. 1 and 2b shall be discharged in a continuous mound along the discharge corridor shown. Shell and sand shall be mounded to the heights possible, without allowing material to overtop the breakwater or existing Island. The Contractor shall construct temporary training levees and ditches as required, using previously discharged material or material from submerged areas within the BUS. The Contractor shall not disturb vegetated areas on the Island during placement, including operating equipment or allowing erosion of these areas by discharged water. The Contractor shall be responsible for placing additional buoys to mark the boundaries of the adjacent oyster lease area and shall insure that no equipment is operated within the lease area as shown. The Contractor shall take actions necessary to prevent flow of water or material across the breakwater or the existing Island. The flow shall be directed to exit the BUS at the open end of the area.

3.4.2.2 Beneficial Use Site No. 2, New Marsh Restoration Area. This area shall be used to place dredged materials from Dredging Sections Nos. 3 through 5. The drawings provide the locations and details for installation of geotextile tube containment structures and earth levees to construct the New Marsh Restoration Site. After completion of construction, and acceptance of the area by the Contracting Officer, the Contractor shall place the required material into the area, by discharging within the corridors shown, to construct the emergent mounds to the width and elevation shown. Pipe advance in Corridors No. 1 and No. 3 shall be from the south. Corridor No. 2 can be filled from either direction. Discharge Corridor No. 1 shall be used first, followed by Corridor No. 3 and finally Corridor No. 2. Unless otherwise directed, one of the three Dredging Sections designated for BUS No. 2, shall be placed in each of the three corridors. If it is deemed necessary to accomplish the desired distribution of materials for marsh habitat construction the Contracting Officer will, at it's discretion, direct changes to be made to the mound template or to increase or decrease the amounts of material to be placed in each corridor. The impact of these directives will not affect the planned dredge pipeline locations or routes, and will not require additional pipeline length or movement in excess of that proposed. No control of effluent is required, except for maintaining weir tube elevation within tolerance during dredging. Effluent shall exit the area by flowing over the low portion of the levee in Reach 3. The Contractor shall ensure that there are no low areas, holes or other deficiencies in the geotextile tube and levee Reaches 1A, 1, 2, and 4 whereby effluent can exit the area during dredge material placement as shown. If losses occur, the Contractor shall take immediate necessary

measures, including temporarily raising the elevation in the low area with sand bags, blocking off holes with earth fill, or other approved actions to effectively stop the flow. Mounds within the discharge corridors shall comply with the requirements for mound dimensions and elevations.. Discharge scour holes shall not be filled. No discharge shall be allowed outside of the limits of the discharge corridors. The pipeline shall be floated on pontoons or other approved techniques shall be used to reach the southern ends of the corridors from the new marsh perimeter. No material shall be placed between the perimeter confinement structures and the corridors or allowed to build up along the dredge pipeline within this area. The Contracting Officer will require removal of material that is inadvertently placed or allowed to accumulate due to leaks in pipe joints, or other reasons attributable to Contractor's maintenance of the dredge pipe in this area, as specified herein. Costs associated with maintaining the cover dikes and proper elevations of the geotextile tube containment structures during dredging and material placement in BUS No. 2 shall be as specified in the Subparagraph: Maintenance above.

3.4.2.3 Beneficial Use Site No. 3, an Unnamed Island in the Vicinity of Ving-et-un Island Enhancement. This area shall be used to place dredged materials from Dredging Section No. 6. Coordinates shown indicate the approximate location of the placement site. This location shall be adjusted by the Contractor, if required, to accomplish the specified placement. Predominantly coarse-grained materials, including shell, shell fragments and sand, dredged from the channel Dredging Section No. 6, shall be discharged in a continuous mound in the water along the north shoreline of the Island near the location shown. Mounding height is not limited in these specifications and no containment structures are required. The Contractor shall not disturb vegetated areas on the Island during placement, including operating equipment or allowing erosion of these areas by discharged water. Other than ensuring no erosion of the existing island occurs, there are no requirements for control of effluent. The Contractor shall be responsible for ensuring that only predominantly coarse-grained materials are placed at this location. If a significant amount of fine-grained material is encountered within this reach, it shall not be placed at BUS No. 3. Rather, the Contractor shall dredge and pump the fine-grained material to BUS No. 2.

3.4.2.4 Beneficial Use Site No.4, New Oyster Reef Pad. Material consisting primarily of oyster shell and shell fragments from the Dredging Section 2a, as specified herein, shall be placed within the limits of the BUS No. 4, to construct the new oyster reef pad. After completion of before-placement surveys, as specified, the Contractor shall commence evenly spreading the shell material across the site, using a spreader discharge mounted on a spudded swing barge or other approved spreading technique or equipment. The material shall be spread across the entire site to a thickness of 0.5 to 1.0 foot. A sounding device and a probe shall be used continuously throughout the placement process to verify continuous coverage of the Bay bottom area with the shell material and the thickness of the placed material within the specified limits. Global Positioning System (GPS) equipment shall be used during the probe and sounding Quality Control verification to record locations during inspection. Recorded locations, probe verification, and sounding determinations of shell thickness shall be maintained continuously at the discharge site, for inspection by the Government Inspector and Contracting Officer. Additionally, copies of the recorded information shall be submitted

on a weekly basis. Upon completion of portions of the new reef pad, the Contractor shall take after-placement surveys as directed and as specified. Areas where the Contracting Officer determines there is a deficiency in thickness of shell, the Contractor shall place additional shell to bring the thickness to within specified limits. No action shall be taken regarding areas having excessive thickness of shell without advance approval. The Contractor shall not drag or otherwise attempt to mechanically spread shell after placement on the Bay bottom unless specifically directed to do so in writing.

3..4.3 Pipelines.

3.4.3.1 Location Details. Every effort has been made to give the pertinent details on the locations of utility pipelines and other facilities that may be encountered in trenching or jacking operations. The data shown are substantially correct. However, the Contractor shall investigate existing conditions and satisfy itself as to the existence of additional construction that may interfere with pipeline laying as specified herein.

3.4.3.2 Submerged Dredge Pipeline. If the Contractor elects to use a submerged section in the dredge discharge pipeline for crossing a navigable channel it may do so without the formality of obtaining a Department of the Army permit for work or structures in navigable waters. However, three (3) copies of detailed plans of the submerged section shall be submitted and approved prior to use of the submerged section. The plans shall indicate clearly the width and depth of the navigation opening and the method used to mark it by day and by night for the safety of navigation. The minimum bottom width of the submerged section shall not be less than 200-feet wide for channels whose authorized width is greater than 200 feet. The minimum bottom width of the submerged section for channels whose authorized width is less than 200 feet shall be the width of the authorized Federal Channel. The highest point on the pipe or ball connection occurring across the bottom width of a submerged section shall not be higher than 9 feet below Mean Low Tide (MLT). Lighted buoys, meeting the requirements of the U.S. Coast Guard Regulation (33 C.F.R. 62.25), shall be provided by the Contractor to mark the navigation opening. A red buoy exhibiting a quick flashing red light shall be used to mark the right side of the opening and a black buoy exhibiting a quick flashing green light shall be used to mark the left side of the opening. The frequency of the flashes shall be not less than 60 per minute. "Right side" and "left side" of the opening shall be in conformance with the lateral system of buoyage established by the U.S. Coast Guard. Requirements for the lighted buoys and description of the lateral system of buoyage will be found in the U.S. Coast Guard Publication CG 208 entitled "Aids to Navigation." Lights to be displayed on pipelines shall be in accordance with the U.S. Coast Guard Regulation 33 CFR 80.23.

3.4.4 Unauthorized Placement of Material.

3.4.4.1 Unauthorized Disposition. Excavated material that is deposited other than in places designated or approved will not be paid for and the Contractor may be required to remove the misplaced excavated material and deposit it where directed at Contractor's expense.

3.4.4.2 Debris Disposal. During the progress of the work, the Contractor shall not deposit worn-out discharge pipe, wire rope, scrap metal, timbers, or other rubbish or obstructive material in the Placement Areas, except as specified herein, or along the banks of the navigable waters. The Contractor shall also remove and dispose existing wire rope, scrap metal, cable spools, pipe and discarded or abandoned dredge parts and materials located within 10 feet of the near bottom edge of both sides of the Channel within the limits of the work specified herein. This material, together with scrap, rope, wire cable, piles, pipe, or other obstructive material that may be encountered during the dredging operations, shall be disposed by the Contractor at approved locations.

3.4.5 Preservation of Public and Private Property.

3.4.5.1 Damages. Fences, roads, ditches, private or public grounds, and other structures or improvements damaged as a result of the Contractor's operations as specified herein shall be repaired or rebuilt by the Contractor at its expense. The areas used by the Contractor in laying and maintaining pipelines shall be restored to the same or as good a condition as existed prior to commencement of the work. Upon completion of the work, the ends of culverts shall be fully closed with wooden bulkheads and trenches and bank cuts shall be backfilled to original ground level.

3.4.5.2 Liability and Restoration. The Contractor shall preserve and protect the existing informational and directional signs, camp facilities, water wells and tanks, station markers, mile markers, and mooring piles which have been established along either bank of the Waterway within the reaches of the dredging operations covered herein. The Contractor shall be liable for and will be required to replace or restore at its expense the signs, camp facilities, water wells and tanks, markers, and mooring piles damaged or destroyed as a result of dredging operations herein specified.

3.4.6 Alternate Placement Area(s) Proposed by Contractor After Award of Contract.

3.4.6.1 Alternate Placement Area(s). If, after award of the contract, a placement area(s) other than that specified herein is proposed, its acceptance will be subject to approval of the Contracting Officer. The Contractor shall furnish written permission from the owners for the use of the substitute placement area(s) and written permission from the owners of the properties involved in obtaining access to the substitute placement area(s). The Contractor shall coordinate the use of the substitute placement area(s) with Federal and State Natural Resource Agencies and shall submit, with its proposal, documentation that demonstrates compliance with the applicable laws and regulations pertinent to designation and coordination of dredged material placement area(s). The Galveston District shall be consulted for specific requirements. Expenses incurred in connection with providing and making available another placement area(s) shall be borne by the Contractor. Materials deposited thereon and operations in connection therewith shall be at the Contractor's risk.

3.4.6.2 Data Submittal. The award of the modification will be subject to the approval of the proposed Contractor-furnished placement area(s) and unless the foregoing required data are furnished with the Contractor's request, the modification for the use of the proposed substitute placement area(s) will not be considered.

3.4.7 Surveys. The Contractor shall perform surveys, as necessary to establish and mark boundaries of Placement Areas and other areas and boundaries as specified. The Contractor shall also perform elevation surveys as specified herein, to accomplish required Quality Control and verification of construction as specified. Surveys required at BUS No. 2 are specified in the SECTION entitled GEOTEXTILE TUBES. Other required Quality Control surveys are specified elsewhere within this contract or will be directed in the field.

**3.5 OVERDEPTH, SIDE, AND END SLOPES.**

3.5.1. Overdepth. To cover inaccuracies of the dredging process, material actually removed from within the specific areas to be dredged to depths as specified in the Subparagraph: Table of Allowable Overdepth, Side and End Slopes below, will be estimated and paid for at contract price or prices.

3.5.2. Side and End Slopes. Material actually removed from within approved limits, to provide for final side and end slopes as specified in the Subparagraph: Table of Allowable Overdepth, Side and End Slopes below, but not in excess of the amounts originally above these limiting side and end slopes will be estimated and paid for, whether dredged in original position or by dredging space below the pay slope plane at the bottom of the slope for upslope material capable of falling into the cut. In computing the limiting amount of side and end slopes dredging, net dimensions, without allowance for overdepth, will be used.

3.5.3 Excessive Dredging. Material taken from beyond the limits as extended in the Subparagraphs: Overdepth, and Side and End Slopes, above, will be deducted from the total amount dredged as excessive overdepth dredging or excessive side or end slope dredging, for which payment will not be made. Nothing herein shall be construed to prevent payment for the removal of shoals performed in accordance with the applicable provisions of either the NON-REGULATED SPECIAL CONTRACT REQUIREMENTS CLAUSES entitled FINAL EXAMINATION AND ACCEPTANCE or SHOALING.

3.5.4 Table of Allowable Overdepth, Side and End Slopes.

| From Station | To Station | Allowable Overdepth (Feet Below Required Depth) | Final | | | | Above Plane (Feet Below MLT) |
|---|---|---|---|---|---|---|---|
| | | | Side Slope Grade | | End Slope Grade | | |
| | | | Vertical | Horizontal | Vertical | Horizontal | |
| 240+00 | --- | --- | --- | --- | 1 | 3 | 9 |
| 240+00 | 390+00 | 2 | 1 | 3 | --- | --- | 9 |
| 390+00 | --- | --- | --- | --- | 1 | 3 | 9 |

**3.6 HOUSTON-GALVESTON VESSEL TRAFFIC SERVICE AREA.** The Contractor shall comply with the following requirements while operating within the Houston-Galveston Vessel Traffic Service (VTS) area:

3.6.1 General. When a dredge or floating plant is to be operated within the Houston-Galveston VTS Area the master shall furnish the Vessel Traffic Center the following report at least 30 minutes prior to beginning operations:

(1) Location of intended operation.

(2) Description of intended operation including Channel obstructions.

(3) Configuration of pipelines, if any, crossing the Channel.

(4) Termination point of pipelines, if any, crossing the Channel.

(5) Time required to re-open the Channel or move for vessel traffic.

(6) Operating impairments, including VHF-FM radios.

3.6.2 Change Notification. The master of a dredge or floating plant shall immediately notify the VTS of changes to the above report and at the completion of operations.

3.6.3 Vessel Traffic Service Location. The Houston-Galveston VTS Area consists of the navigable Channels between the Galveston Entrance Channel Buoy 1 and the Houston Turning Basin, Galveston Channel, Texas City Channel, Bayport Channel, the Gulf Intracoastal Waterway and Galveston-Freeport Cutoff from mile 346 to mile 352.

3.6.4 Communications with the Vessel Traffic Center, call sign "HOUSTON TRAFFIC," shall be accomplished via VHF-FM Channel 12. The Traffic Center guards both Channel 12 and Channel 13 on a 24-hour basis.

3.6.5 Provisions and Operations. The master of a dredge or floating plant shall be aware of and comply with the provisions of the Order Relating to Lightering and Bunkering Operations and Multiple Vessel Moorings and will notify the Houston-Galveston VTS when refueling operations are to be conducted.

**3.7 REPORTING REQUIREMENTS.** The Contractor shall prepare and maintain a daily Dredging Report using the Galveston District's automated Contractor's Daily Report database. This database replaces SWG Form 89. The program will be provided to the Contractor using 3.5-inch diskettes at the pre-construction conference. Instructions and demonstration on the installation and use of this software will also be provided at the pre-construction conference. The Contractor will need an IBM compatible with a minimum of a 486/66 processor with 8 Mb of RAM running Microsoft Windows 3.11 or Microsoft Windows 95, Y2K compliant. Hard drive space needed to install the program and accommodate the data will be approximately 15 Mb. Printing will be best accomplished with either a LaserJet or Inkjet Printer on 8.5- by 11-inch paper in the portrait mode. Modem settings will be automatically handled at the point of transmission, but the Contractor is required to know what serial communications (COM) port it used for the modem (for example: COM1, COM2, or COM3). A telephone number for transmitting the data by modem to the District server will also be provided at the pre-construction conference. The Contractor will however have the option of submitting the data either by diskette or by modem. If the Contractor elects to submit the data by modem, the data shall be submitted on a daily basis. If the Contractor elects to submit the reports by diskette, the data will still be submitted on a daily basis when possible. Coordination on delays shall be made with the Area Engineer or its designated representative. The Contractor will be required to print and sign reports and submit the original hard copies to the Area Engineer to verify authentication. Monthly reports will be generated by the District Office using the reporting features of the database. If technical problems arise, the point-of-contact for this matter will be Tim Baumer at (409) 766-3874.

--oOo--