# In the United States Court of Federal Claims

No. 05-840 C and No. 05-1044 C
(CONSOLIDATED)
(Filed: November 28 , 2006)

| | |
|---|---|
| **FISHERMAN'S HARVEST, INC., et al.**, Plaintiffs, v. **THE UNITED STATES**, Defendant, v. **WEEKS MARINE, INC.** Intervenor-Defendant. | 28 U.S.C. § 1497; damages to oyster growers caused by dredging operations; RCFC 19; joinder of persons needed for just adjudication; necessary parties; 28 U.S.C. § 1500; RCFC 24; alignment of intervenor; RCFC 12(f); motion to strike; RCFC 20(b); motion for separate trials |

*Paul W. O'Finan*, of O'Finan Law Office, Houston, TX; and *David E. Bernsen*, of Law Office of David E. Bernsen, P.C., Beaumont, TX, for Plaintiffs.

*David D'Alessandris*, with whom were with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant. *P. Alex Petty* and *Ana-Valli Gordon*, Assistant District Counsel, U.S. Army Corps of Engineers, Galveston, TX, of counsel.

*Kenneth G. Engerrand*, of Brown Simms, P.C., Houston, TX, for Intervenor-Defendant, with whom was *Allen D. Hemphill*, Brown Sims, P.C., Houston, TX, of counsel.

---

## OPINION AND ORDER

---

**DAMICH**, Chief Judge.

## I. Introduction

In this case brought before the Court pursuant to 28 U.S.C. § 1497, oyster growers seek relief for damages to their oyster beds allegedly caused by dredging operations implemented by the United States Army Corps of Engineers ("USACE"). Weeks Marine, Inc. ("Weeks Marine"), the government contractor that performed the dredging operations, intervened in the case. Presently before the Court is Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci Contracting Corp. ("Bertucci") and Luhr Bros., Inc. ("Luhr") ("Mot. to Join Parties"). Bertucci and Luhr are subcontractors that assisted Weeks Marine in the dredging operations. Also before the Court are Plaintiffs' Motion to Strike Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr, Plaintiffs' Motion for Separate Trials, and Defendant's Motion for Leave to File an Amended Answer.

The Court DENIES Defendant's Motion for Leave to File an Amended Answer as moot, since the Court finds that Weeks Marine should be realigned as an intervenor-defendant. The Court DENIES Weeks Marine's Motion to Join Parties and to Join Claims Against Bertucci and Luhr. The Court further DENIES Plaintiffs' Motion to Strike Weeks Marine's Motion to Join Parties and to Join Claims Against Bertucci and Luhr and the Court DENIES Plaintiffs' Motion for Separate Trials. The reasons for the Court's decisions are set forth below.

## II. Background

The Plaintiffs, Fisherman's Harvest, Inc. ("Fisherman's Harvest"), C. Joe Nelson, Jr., Doris Mae Nelson, Vanessa Jo Nelson Vallejo, Vickie Jo Nelson Salazar, Childress Seafood, Inc. ("Childress Seafood"), W.F. Childress, and Anton Lee Kelly, are the owners or beneficial owners of oyster leases in Galveston Bay and Trinity Bay, Texas, and of businesses involved in the harvesting, processing and sale of oysters in Smith Point, Texas. Compl. ¶ 11. C. Joe Nelson, Jr. and Doris Mae Nelson are the sole shareholders of Fisherman's Harvest, and W.F. Childress is the sole shareholder of Childress Seafood. *Id.* ¶¶ 2-3. Plaintiffs allege that their oyster leases and businesses suffered damage as a consequence of maintenance dredging and widening in the Trinity River as well as maintenance dredging in the channel at Smith Point. *Id.* ¶¶ 12, 26. The dredging project was designed and implemented by the USACE between July and August 2003. *Id.* ¶¶ 14, 17. According to Plaintiffs, the geotubes[1] failed and the breakwater barriers were not properly constructed, resulting in discharge of silt, sediments, and other toxic materials onto Plaintiffs' oyster leases. *Id.* ¶ 17. Plaintiffs invoke the court's jurisdiction under 28 U.S.C. § 1497[2] and seek actual damages, damages for emotional distress, and exemplary damages from

---

[1] A geotube is a long cylinder that is filled with sediment and used as a wall to retain sediment.

[2] 28 U.S.C. § 1497 (2000) provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages to oyster growers on

the government totaling at least $18,963,516. *Id.* ¶ 1, 28. Plaintiffs assert that the conduct by the government was sufficiently reckless and willful as to constitute gross negligence. *Id.* ¶ 27.

On January 31, 2006, Intervenor Weeks Marine filed a Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr pursuant to Rule 19(a) of the Rules of the Court of Federal Claims ("RCFC"). Bertucci was the subcontractor responsible for the implementation of the geotube system designed by USACE, and Luhr was the subcontractor responsible for construction of the breakwater designed by USACE. According to Weeks Marine, Bertucci and Luhr are both liable to Intervenor for contribution and indemnity.

On February 15, 2006, Plaintiffs filed a response opposing Weeks Marine's motion, as well as a Motion to Strike Weeks Marine's Motion and a Motion for Separate Trials. Defendant likewise opposed Weeks Marine's motion.

On March 30, 2006, Defendant filed a Motion for Leave to file an Amended Answer to Intervenor's complaint in order to assert the affirmative defense of accord and satisfaction.

All four motions are the subject of this decision. In addition, this decision concerns the alignment of Intervenor, an issue alluded to in Plaintiffs' response to Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr. The Court deems the issue important to be settled in general, and, in particular, because settling the issue determines the disposition of Defendant's Motion for Leave to File an Amended Answer. Supplemental briefing and supporting documents regarding the indemnity agreement between Defendant and Weeks Marine were requested by the Court in order to address this issue. Those documents were filed by Defendant on September 14, 2006, and by Weeks Marine on September 22, 2006.

## III. Discussion

### A. Alignment of Weeks Marine

On August 19, 2005, Weeks Marine filed a Motion for Leave to Intervene as a matter of right under RCFC 24(a).[3] Weeks Marine's motion was not opposed and was subsequently granted. Attached to Weeks Marine's Motion for Leave to Intervene was a complaint in

---

> private or leased lands or bottoms arising from dredging operations or use of other machinery and equipment in making river and harbor improvements authorized by Act of Congress.

The statute originated as the Rivers and Harbors Act of August 30, 1935, 49 Stat. 1028, 1049, 28 U.S.C. § 250a (1940). Upon codification as 28 U.S.C. § 1497, the section was amended only to substitute "river and harbor improvements" for "such improvements" and to change certain other phraseology. Reviser's Notes, 28 U.S.C. § 1497 (1948).

[3] Weeks Marine subsequently amended its motion on August 23, 2005.

intervention. Accordingly, the Clerk of the Court entered Weeks Marine into the suit as an intervenor-plaintiff.

Plaintiffs assert, in their response to Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr, that there is no jurisdictional basis for Weeks Marine to participate in this lawsuit as a plaintiff under RCFC 19 (Joinder of Persons Needed for Just Adjudication), although Weeks Marine may be able to participate as a third party defendant pursuant to RCFC 14. Specifically, Plaintiffs contend that since Weeks Marine is not an oyster harvester, Weeks Marine cannot claim a right to relief under 28 U.S.C. § 1497. Weeks Marine counters that its claims against Defendant fall within the broad jurisdictional grant to this court provided by the statute, namely "any claim for damages to oyster growers."

Plaintiffs appear to confuse the particular rules of the court that, in general, allow parties to enter a lawsuit. Although it is true that the plaintiff to a lawsuit is afforded great discretion in structuring the litigation, that discretion is not absolute. There are several avenues available for other parties, absentees and the court to override the structure preferred by plaintiff. 4 James Wm. Moore et al., Moore's Federal Practice § 19.02[1], at 19-9 (3d ed. 2006). Additional parties may be joined pursuant to the compulsory joinder rule, Rule 19; Defendant may bring in a third party defendant pursuant to Rule 14; and an absentee may intervene pursuant to Rule 24. RCFC 14, 19, and 24; Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 14, 19, 24;[4] 4 Moore et al. § 19.02, at 19-9 to -10. Each rule is different, and the standard for each is different. *See*, *e.g.*, *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 654 (2004) (distinguishing between RCFC 14 and RCFC 24). In this case, Weeks Marine has entered the lawsuit pursuant to RCFC 24 (Intervention), and hence RCFC 14 (Third-Party Practice) and RCFC 19 (Joinder of Persons Necessary for Just Adjudication) are irrelevant.

RCFC 24 does not provide direction as to whether the intervenor should be aligned as a plaintiff or a defendant; it speaks in terms of "claim" or "defense." In this case, the Court determines that the proper alignment of Weeks Marine depends on the issue of indemnity. In the pleadings, as well as in the briefing on the motions, Weeks Marine contends that it is entitled to indemnity from Defendant, whereas Defendant contends that it is entitled to indemnity from Weeks Marine.[5] Because the nature of the indemnity agreement between Weeks Marine and

---

[4] RCFC 19 and 24 largely track Fed. R. Civ. P. 19 and 24, respectively, and interpretation of Fed. R. Civ. P. 19 and 24 informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). As noted by Defendant, RCFC 14 serves to protect Defendant from double liability because the rules do not provide for interpleader as in Fed. R. Civ. P. 14.

[5] *See* Am. Compl. in Intervention of Weeks Marine ¶ 24 ("[T]o the extent that Plaintiffs suffered any damages as alleged, such damages are entirely the responsibility of the United States

Defendant was unclear to the Court, the Court ordered Weeks Marine and Defendant to provide the court with supplemental briefing and supporting documents regarding their indemnity agreement. Unfortunately, the information in the supplemental briefing is somewhat equivocal, as it supports indemnification of Weeks Marine by the United States and of the United States by Weeks Marine. The Court, therefore, rests its decision on the stage of the litigation that is before it, namely, the alleged liability of the United States to Plaintiffs under the statute. At this stage, it is in Weeks Marine's best interest to support the case of the United States that there is no liability to Plaintiffs.

The lawsuit before this Court was brought by Plaintiffs against the United States (Defendant), not against Weeks Marine. The thrust of the portions of the contract between Weeks Marine and the USACE cited by Weeks Marine as evidence of an indemnity agreement between Weeks Marine and the USACE is that the United States will indemnify or contribute to damages assessed against Weeks Marine.[6] Therefore, for Weeks Marine to have a claim against the United States, a court must first hold Weeks Marine liable to Plaintiffs. In general, this Court does not have jurisdiction over lawsuits between private parties. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69-70 (1982). Accordingly, Weeks Marine is not properly an intervenor-plaintiff in this litigation.

Nevertheless, Weeks Marine still has an interest in this lawsuit. If Plaintiffs are successful in their strict liability claim against the Defendant, then Defendant may seek

---

and the United States Army Corps of Engineers, and Intervenor is accordingly entitled to indemnity from the United States and the United States Army Corps of Engineers."); *Id*. ¶ 25 ("[T]o the extent that Plaintiffs suffered any damages as alleged, such damages were caused, in whole or in part, by the conduct and/or negligence of the United States and the United States Army Corps of Engineers, and Intervenor is accordingly entitled to contribution from the United States and the United States Army Corps of Engineers."); *cf.* Answer to Am. Complaint in Intervention ¶ 28 ("Pursuant to clauses 52.236-6, 52.236-7, 52.236-9(b), 52.236-13, as well as provisions of sections 01355 and 02482, of contract DACW64-02-C-0034 between intervenor and the United States Army Corps of Engineers, intervenor is required to indemnify the United States for damage purportedly suffered by plaintiffs.").

[6] In the supplemental briefing ordered by the Court, Weeks Marine attached various portions of the contract that purportedly evidence an indemnity agreement between Weeks Marine and Defendant. Although no explanation was provided, the Court understands Weeks Marine's argument to be that it is entitled to indemnity or contribution from Defendant because Defendant failed in its duty under the contract to provide notice to Weeks Marine of noncompliance with public health, safety, and environmental regulations, and because Defendant provided defective specifications and/or drawings relating to dredging operations and placement of geotubes that contributed to or caused the alleged damages to oyster beds. Weeks Marine also relies on common law negligence to support its claim for contribution or indemnity from Defendant.

indemnification or contribution from Weeks Marine.[7] An indemnitor may be allowed to intervene in a lawsuit brought against an indemnitee in order to protect its interest under an indemnity agreement. *Tri-Wall Containers, Inc. v. United States*, 187 Ct. Cl. 326, 332 (1969); *John R. Sand*, 59 Fed. Cl. at 653-654; *Knapp v. Hankins*, 106 F. Supp. 43, 47 (E.D. Ill. 1952); *United States v. C. M. Lane Lifeboat Co., Inc.*, 25 F. Supp. 410, 411 (E.D.N.Y. 1938); *Guaranty Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 384 (Miss. 1987); *see* J. P. Ludington, Annotation, *When is Representation of Applicant's Interest by Existing Parties Inadequate and Applicant Bound by Judgment so as to be Entitled to Intervention as of Right under Federal Rule 24(a)(2) and Similar State Statutes or Rules?*, 84 A.L.R.2d 1412, 1442 (1962). When an indemnitor intervenes, the indemnitor more properly enters the lawsuit as an intervenor-defendant. *See Tri-Wall Containers*, 187 Ct. Cl. at 332; *Fala Corp. v. United States*, 53 Fed. Cl. 86, 87 (2002); *Lane Lifeboat*, 25 F. Supp. at 410-411. Here, Weeks Marine is an indemnitor potentially required to pay Defendant, the indemnitee, pursuant to the contract. Accordingly, Weeks Marine may enter the lawsuit as an intervenor-defendant.

In arriving at this conclusion, the Court is guided by *H. J. Lewis Oyster Co. v. United States*, 107 F. Supp. 570, 576 (Ct. Cl. 1952). In that case, the State of Connecticut was allowed to intervene as a defendant when it had agreed to pay the United States for any claims for damages by oyster growers resulting from improvements in Bridgeport Harbor.[8] Despite the fact that the State of Connecticut was an intervenor-defendant, it was ultimately held liable to the United States (the defendant) for the damages to the oyster beds. *Id*. at 578.[9] Like the State of Connecticut, Weeks Marine's interest in the lawsuit at this stage is more closely aligned with Defendant, namely in proving that the dredging operations were not the factual cause of the damages to Plaintiffs' oyster beds.

---

[7] Although the contract provisions cited by Defendant contain no explicit language of an indemnity agreement, the provisions state that Weeks Marine is responsible for complying with public safety and environmental regulations and is responsible for all damages resulting from its failure to comply with the regulations, or for its subcontractors' failure to comply. In addition, the cited provisions provide that Weeks Marine is required to pay for damages resulting from its negligence during the dredging operations.

[8] *H.J. Lewis Oyster Co.* was instituted pursuant to 28 U.S.C. § 250a, the predecessor statute to 28 U.S.C. § 1497, but the Court of Claims rendered its decision after the provision was supplanted by 28 U.S.C. § 1497. 107 F. Supp. at 575 n.1. Given the near identity in language between the two provisions, *see supra* note 2, the Court finds the precedent of *H.J. Lewis Oyster Co.* to be applicable to this case filed under 28 U.S.C. § 1497.

[9] By allowing the State of Connecticut to intervene, the Court of Claims clearly found that the language of the statute gives the court jurisdiction over parties other than oyster growers. *See also Vujnovich v. Great Lakes Dredge & Dock Co.*, No. 87-4489, 1988 WL 44295, at *2 (E.D. La. May 4, 1988) (transferring claims by oyster grower against the contractor who performed the dredging operations, along with claims against the government, to the Claims Court).

The alignment of the parties as designated in their pleadings is not binding on the court, and the court may realign the parties according to their interests in the litigation. *City of Indianapolis v. Chase Nat'l Bank of New York*, 314 U.S. 63, 69 (1941) (holding that it is the "duty . . . of the lower federal courts to look beyond the pleadings, and arrange the parties according to their sides in the dispute") (citation omitted); *Keith v. Volpe*, 858 F.2d 467, 476 (9th Cir. 1988); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1177-78 (5th Cir. 1984); 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3605, at 400 (2d ed. 1984). In particular, the court may realign an intervening party. *See*, *e.g.*, *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 159-61 (3d Cir. 1995); *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1239-41 (3d Cir. 1994) (citing *City of Indianapolis*, 314 U.S. at 69-70); *Butcher & Singer, Inc. v. Kellam*, 623 F. Supp. 418, 421-22 (D. Del. 1985); *Carleton v. Withers*, 609 F. Supp. 146, 149 (M.D. La. 1985). In this case, the Court deems it appropriate to realign Weeks Marine from an intervenor-plaintiff to an intervenor-defendant. In view of the realignment, Defendant is now aligned on the same side of the case as Weeks Marine and it would serve no purpose for Defendant to answer Weeks Marine's complaint in intervention. Consequently, the Court denies Defendant's Motion for Leave to File an Amended Answer as moot. Instead, the Court will give Weeks Marine an opportunity to file an answer to Plaintiffs' complaint.

**B. Joinder of Bertucci and Luhr**

Weeks Marine, in its motion, requests the Court to grant leave, pursuant to RCFC 19 (Joinder of Persons Needed for Just Adjudication), to join subcontractors Bertucci and Luhr as parties to the suit and to join claims against Bertucci and Luhr. The determination of whether Bertucci and Luhr are needed for just adjudication pursuant to RCFC 19 requires a two-step analysis: (1) the Court must first determine whether Bertucci and Luhr are necessary parties pursuant to RCFC 19(a) such that they should be joined if feasible; and (2) if the parties are necessary but joinder is infeasible, the Court must then determine whether the action should proceed without them or whether to dismiss the case because they are indispensable under RCFC 19(b). RCFC 19(a), (b); Fed. R. Civ. P. 19(a), (b); *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1372 (Fed. Cir. 1999); *Pasco Int'l Ltd. v. Stenograph Corp.*, 637 F.2d 496, 500 (7th Cir. 1980); *J.G.B. Enters., Inc. v. United States*, 57 Fed. Cl. 415, 416 (2003); *Brown v. United States*, 42 Fed. Cl. 538, 563 (1998); *Freeman v. Liu*, 112 F.R.D. 35, 40 (N.D. Ill. 1986).

RCFC 19(a) states in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring

double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Weeks Marine argues that because Bertucci and Luhr may be liable to Weeks Marine for contribution and indemnity, to Defendant for contribution, and to Plaintiffs for damages, complete relief cannot be accorded to the present parties to the lawsuit in the absence of Bertucci and Luhr. Therefore, Weeks Marine contends that Bertucci and Luhr are proper parties for joinder pursuant to RCFC 19(a)(1).

Complete relief pursuant to the rule, however, refers only to "relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (citing 3A James Wm. Moore et al., Moore's Federal Practice § 19.07-1[1], at 19-96 (2d ed. 1984)); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301 (3rd Cir. 1980); *J.G.B. Enters.*, 57 Fed. Cl. at 417 (2003); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1604, at 41 (3d ed. 2001). In the present litigation, Plaintiffs claim that their oyster beds were damaged by dredging operations conducted by Weeks Marine pursuant to a contract with Defendant. Plaintiffs seek relief for damages to their oyster beds from Defendant, and Defendant indicates that it has a right of indemnification against Weeks Marine. This Court can grant relief to Plaintiffs and/or Defendant in the absence of Bertucci and Luhr. Under 28 U.S.C. § 1497, if this Court finds that the dredging operations were the factual cause of the damage to the oyster beds, then the Court will hold Defendant liable for the cost of the damages. *Petrovich v. United States*, 421 F.2d 1364, 1366 (Ct. Cl. 1970); *see Schroeder Besse Oyster Co. v. United States*, 95 Ct. Cl. 729, 738 (1942) (interpreting the Rivers and Harbors Improvement Act, the predecessor statute). If the Court finds that Weeks Marine had agreed to indemnify Defendant against damages to the oyster beds pursuant to an indemnity agreement, then the Court may in turn find Weeks Marine liable to Defendant. *See H.J. Lewis Oyster Co.*, 107 F. Supp. at 578. The fact that Plaintiffs, Defendant and Weeks Marine may each have claims against Bertucci and Luhr is of no consequence to whether complete relief can be accorded as between Plaintiffs, Defendant, and Weeks Marine. Hence, Bertucci and Luhr need not be joined in this lawsuit pursuant to RCFC 19(a)(1).

Weeks Marine further alleges that because Bertucci and Luhr may be entitled to contribution and indemnity from Defendant to the extent they are found liable to Plaintiffs, proceeding in the absence of Bertucci and Luhr will impair Bertucci and Luhr's right to protect their claim for contribution and indemnity against Defendant pursuant to RCFC 19(a)(2)(i). The present litigation, however, does not involve a claim by Plaintiffs against Bertucci and Luhr. Therefore, this Court will not find Bertucci and Luhr to be liable to Plaintiffs, and Bertucci and Luhr will not have a claim for indemnity or contribution against Defendant in this litigation. Plaintiffs' claim in this litigation is a strict liability claim against Defendant. If Defendant is found liable to Plaintiffs, then Defendant may seek contribution or indemnity from Weeks Marine, which may, in turn, seek contribution or indemnity from Bertucci and Luhr. Weeks

Marine can seek indemnity or contribution against Bertucci and Luhr in a separate lawsuit.[10] Accordingly, Weeks Marine's ability to resolve any dispute with Bertucci and/or Luhr will not be impaired by the resolution of this action in the absence of Bertucci and Luhr. *See*, *e.g.*, *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1016 (8th Cir. 1984); *Sykes v. Hengel*, 220 F.R.D. 593, 597-98 (S.D. Iowa 2004). The issue before this Court is whether or not the dredging operations caused the harm to Plaintiffs' oyster beds. On that issue, Defendant, Weeks Marine, Bertucci and Luhr's interests are all aligned. There is no evidence that Defendant and Weeks Marine cannot adequately argue the issue in the absence of Bertucci and Luhr. *See Washington v. Daley*, 173 F.3d 1158, 1167-68 (9th Cir. 1999); *Rochester Methodist Hosp.*, 728 F.2d at 1016; *Sykes*, 220 F.R.D. at 597. The facts simply do not counsel in favor of joinder of Bertucci and Luhr under RCFC 19(a)(2)(i).

Last, Weeks Marine asserts that Plaintiffs have sued Bertucci and Luhr in the Southern District of Texas for the same damages for which Plaintiffs here seek recovery from Defendant. Failure to permit participation of Bertucci and Luhr in the present action may, according to Weeks Marine, expose Bertucci and Luhr to inconsistent obligations pursuant to RCFC 19(a)(2)(ii). Weeks Marine further argues that the absence of Bertucci and Luhr will expose Weeks Marine to the risk of inconsistent obligations under the rule. The clear language of the rule refers only to the risk of subjecting "the persons already parties" to the litigation to inconsistent obligations. RCFC 19(a)(2)(ii). The Court, therefore, need not consider the risk of subjecting Bertucci and Luhr to inconsistent obligations, and shall consider only the risk to Weeks Marine. An inconsistent obligation is not the same as an inconsistent result. 4 James Wm. Moore et al., Moore's Federal Practice § 19.03[4][d], at 19-59 (3d ed. 2006); *see Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998); *Boone v. Gen. Motors Acceptance Corp.*, 682 F.2d 552, 554 (5th Cir. 1982); *J.G.B. Enters.*, 57 Fed. Cl. at 417; *Sykes*, 220 F.R.D. at 598; *Blumberg v. Gates*, 204 F.R.D. 453, 455 (C.D. Cal. 2001). As the court explained in *Delgado*:

> Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

*Delgado*, 139 F.3d at 3 (citations omitted). The issue of indemnification by Weeks Marine's subcontractors is distinct from the issue of whether the dredging operations were the factual

---

[10] It is also true that Defendant could seek indemnification from Weeks Marine in a separate lawsuit. This fact, however, does not have the same bearing on Weeks Marine's participation in this lawsuit as the availability of a separate lawsuit does on Bertucci and Luhr's participation. Weeks Marine entered the lawsuit as an intervenor under RCFC 24. The standard for intervention under RCFC 24 is different from the standard for joinder of parties under RCFC 19. Furthermore, Weeks Marine's motion to intervene was unopposed.

cause of the damages to Plaintiffs' oyster beds. While it is possible that Weeks Marine could be subjected to inconsistent results should it be required to pursue its indemnity or contribution claims against Bertucci and Luhr in a separate action, there is no risk that Weeks Marine could be subjected to inconsistent obligations by this Court or another court.

Weeks Marine fails to demonstrate that complete relief cannot be accorded between Plaintiffs, Defendant and Weeks Marine in the absence of Bertucci and Luhr. Moreover, there is insufficient showing that not joining Bertucci and Luhr in this litigation may impair or impede Bertucci and Luhr's ability to protect their interests or may leave Plaintiffs, Defendant or Weeks Marine at a substantial risk of inconsistent obligations. The courts generally do not consider potential indemnitors to be parties whose joinder is required if feasible under Rule 19. Moore et al. § 19.06[2], at 19-107 to -108 (3d ed. 2006); *see Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980); *Field*, 626 F.2d at 298 n.7; *Centric Group, LLC v. Sojitz Corp. of Am.*, No. 4:05CV00522AGF, 2006 WL 133487, at *3 (E.D. Mo. Jan. 12, 2006); *United States v. Nye County, Nev.*, 951 F. Supp. 1502, 1513 (D. Nev. 1996).[11] Therefore, the Court finds that Bertucci and Luhr are not necessary parties whose joinder is required pursuant to RCFC 19(a). Because the Court finds that Bertucci and Luhr are not parties necessary to the litigation, the Court need not reach whether joinder is feasible.

Plaintiffs argue that 28 U.S.C. § 1500 should bar a decision by this Court on the issue of party joinder before a ruling by the United States Court of Appeals for the Federal Circuit ("Federal Circuit") in the case being transferred from the Southern District of Texas to the Court of Federal Claims (Civil Cause No. G-05-151).[12] Plaintiffs' argument rests on the fact that Plaintiffs filed its notice of appeal in that case before Weeks Marine filed its motion for leave to join parties and claims in this case. Plaintiffs have misinterpreted 28 U.S.C. § 1500. The statute states in relevant part: "The United States Court of Federal Claims shall not have *jurisdiction of any claim* for or in respect to which the plaintiff . . . has pending in any other court." 28 U.S.C. § 1500 (2000) (emphasis added). The statute, therefore, addresses whether the court has jurisdiction over a claim, not whether the court can decide a motion. The statute dates back to the time of the Civil War, and its purpose is to prevent duplicate lawsuits in the Court of Federal Claims and the district courts against the United States and/or its agents. *Keene Corp. v. United States*, 508 U.S. 200, 206-07 (1993). Plaintiffs are correct in that the appropriate time for determination of whether another claim is pending is the time at which the suit is filed. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1548 (Fed. Cir. 1994); *Williams v. United States*, No. 05-1123C, 2006 WL 1084002, at *4 (Fed. Cl. Apr. 25, 2006). This case was filed on August 1, 2005. At that time, Civil Cause No. G-05-151 was already pending in the

---

[11] Several of the cases indicate that indemnitors can, however, be brought into the suit under Fed. R. Civ. P. 14. *Pasco Int'l*, 637 F.2d at 503; *Field*, 626 F.2d at 298. RCFC 14, however, differs in several respects from Fed. R. Civ. P. 14. In particular, a third party defendant may be summoned pursuant to RCFC 14(a) only by the United States.

[12] The appeal before the Federal Circuit is No. 06-1208.

District Court for the Southern District of Texas, that suit having been filed on March 14, 2005. Am. Compl. in Intervention of Weeks Marine ¶ 13. The claim in that case was, however, against Weeks Marine and other companies, not against the United States or its agents. *Id*. When Weeks Marine sought to join Defendant as a third-party defendant, the district court ordered the entire action to be transferred to the U.S. Court of Federal Claims. Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr ¶ 13. It is that order which Plaintiffs have appealed to the Federal Circuit. *Id*. Hence, the claim against the United States in the case filed in the Southern District of Texas was by Weeks Marine (the Defendant there), not by Plaintiffs, and was for indemnification, not for damage to oyster beds. *Id*. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." *Loveladies Harbor,* 27 F.3d at 1551. Here, there is simply no evidence that a claim was pending in another court that would preclude this court from having jurisdiction over this case, much less this motion, pursuant to 28 U.S.C. § 1500.

The Court finds that Bertucci and Luhr are not necessary parties who should be joined if feasible pursuant to RCFC 19(a), and therefore, joinder of Bertucci and Luhr is not required for just adjudication. Accordingly, the Court denies Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr.

**C. Motion to Strike**

In addition to filing a response to Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr, Plaintiffs also filed a Motion to Strike Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr. In their motion to strike, Plaintiffs largely recapitulate the arguments that were made in their response.[13] Motions to strike are made pursuant to RCFC 12(f). Weeks Marine and Defendant assert that Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr does not satisfy any of the criteria set forth in RCFC 12(f) warranting the Court to do so. Further, Defendant contends that Plaintiffs do not establish that Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr caused Plaintiffs any prejudice or confusion, citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 61 Fed. Cl. 175, 177 (2004); *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 633 n.6 (2002); *Stearns Co., Ltd. v. United States*, 34 Fed. Cl. 264, 268-69 (1995). The Court agrees.

---

[13] In their motion to strike, Plaintiffs also contend that Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr does not conform to the RCFC in how it is styled and because it fails to identify the presiding judge. Weeks Marine and Defendant counter that Plaintiffs' motion to strike fails to comply with the captioning style ordered by the Court. These peccadillos hardly amount to a sound basis for a motion to strike; the Parties are, nevertheless, reminded to observe the filing requirements set forth in the RCFC.

RCFC 12(f) provides in relevant part: "Upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[14] Courts view motions to strike with disfavor and rarely grant them. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 394 (3d ed. 2004); 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1], at 12-99 (3d ed. 2006). A motion to strike must be directed to a "pleading," which term has been construed narrowly by the courts. Moore et al. § 12.37[2], at 12-100.1. Other court documents may not be attacked by a motion to strike. *Id.*; *see Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 180 n.15 (2005); *Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D. Ala. 1999); *Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 683 (D. Ariz. 1993). In particular, a motion to strike may not be used to strike another motion. *Phinney v. Paulshock*, 181 F.R.D. 185, 207 (D.N.H. 1998) (denying motion to strike motion for sanctions because a motion for sanctions is not a "pleading" as defined in Fed. R. Civ. P. 7(a)); *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) (finding that motion to strike and memorandum in support thereof do not constitute a pleading, and denying motion to strike said motion and memorandum); *Heise v. Olympus Optical Co.*, 111 F.R.D. 1, 4 (N.D. Ind. 1986) (denying motion to strike amended motion to dismiss). Instead, courts may regard a motion to strike a motion simply as a response to that motion. *See*, *e.g.*, *Sharpe v. MCI Telecomm. Corp.*, 19 F. Supp. 2d 483, 487 (E.D.N.C. 1998) (finding motion to strike cross-motion for summary judgment as improper and therefore construing the motion to strike as a response to the motion). In this case, Plaintiffs' motion to strike does not comport with RCFC 12(f) because Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr does not constitute a "pleading" under the rule.

The Court denies Plaintiffs' Motion to Strike Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr. The Court treats the arguments contained in Plaintiffs' motion to strike as a response to Weeks Marine's motion. All of the arguments contained in Plaintiffs' motion to strike have, however, already been addressed *supra* and will not be addressed again here.

### D. Motion for Separate Trials

Plaintiffs ask the Court to grant separate trials for their claims against Defendant and for the claims between Weeks Marine and Defendant. Plaintiffs aver that they have not made any claims against Weeks Marine and Weeks Marine has not made any claims against them. Further, Plaintiffs argue that Weeks Marine's claims are contractual in nature whereas Plaintiffs' claims against Defendant are as oyster growers pursuant to 28 U.S.C. § 1497, and hence Weeks

---

[14] RCFC 12(f) is identical to Fed. R. Civ. P. 12(f) and interpretation of Fed. R. Civ. P. 12(f) informs the Court's analysis. *See supra* note 4.

Marine's and Plaintiffs' claims do not contain a common question of law. Therefore, Plaintiffs assert that separate trials are proper under RCFC 20(b).[15]

RCFC 20(b) gives courts discretion to order separate trials to "prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom the party asserts no claim and who asserts no claim against the party." RCFC 20(b).[16] Nonetheless, in exercising their discretion under Fed. R. Civ. P. 20(b), courts "are inclined to avoid duplicating trials of the same matters and therefore exercise their discretion under Rule 20(b) cautiously." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1660, at 470 (3d ed. 2001). According to Weeks Marine, having separate trials for Weeks Marine and for Plaintiffs would be a waste of judicial and private resources and could lead to inconsistent results. Although the Court finds no danger of inconsistent results since both trials would be before this Court, there is concern for wasting judicial resources. The evidence presented to show factual causation of damages to the oyster growers by the dredging operations would have to be repeated if Plaintiffs' claims against Defendant were tried separately from the claims between Defendant and Weeks Marine. Courts have not been inclined to grant a motion for separate trials when doing so would foster rather than prevent delay. *Keister v. Dow Chem. Co.*, 723 F. Supp. 117, 122 (E.D. Ark.1989); *Dillard v. Crenshaw County*, 640 F. Supp. 1347, 1371 (M.D. Ala. 1986); *Chappell & Co. v. Santangelo*, 30 F. Supp. 599, 599 (D. Conn. 1939). Here, because there would be overlap in the evidence, it would be less efficient to hold separate trials. Moreover, Weeks Marine would lose the opportunity to assist in Defendant's defense against Plaintiffs' claims.

Weeks Marine proposes that the Court could hold a bifurcated proceeding, first determining the liability of Defendant to Plaintiffs for damages to their oyster beds and then determining the proportion of the damages owed by Weeks Marine to Defendant. Defendant rebuffs Weeks Marine's proposal, arguing that claims for indemnity and contribution are likely to be decided on summary judgment, before any trial of Plaintiffs' damages. Accordingly, the Court defers rendering a decision on trial bifurcation until later in the proceeding after dispositive motions have been filed.

---

[15] In their motion, Plaintiffs also ask the Court to change Weeks Marine from a plaintiff to a third party defendant. A third party defendant designation would arise only pursuant to RCFC 14, but here Weeks Marine entered the suit pursuant to RCFC 24. For the reasons discussed above, the Court finds it appropriate to realign Weeks Marine from an intervenor-plaintiff to an intervenor-defendant pursuant to RCFC 24. Hence, Weeks Marine is now realigned as a defendant in accordance with Plaintiffs' request.

[16] Fed. R. Civ. P. 20(b) is identical to RCFC 20(b) and interpretation of Fed. R. Civ. P. 20(b) informs the Court's analysis. *See supra* note 4.

The Court concludes that separate trials would not encourage overall judicial efficiency and are not warranted pursuant RCFC 20(b). Accordingly, the Court denies Plaintiffs' Motion for Separate Trials.

## IV. Conclusion

The Clerk of Court is ORDERED to realign Weeks Marine as an intervenor-defendant. Weeks Marine is permitted to file an Answer to Plaintiffs' Complaint on or before **January 5, 2007**.

Defendant's Motion to File an Amended Answer is DENIED as moot.

Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr is DENIED.

Plaintiffs' Motion to Strike Weeks Marine's Motion for Leave to Join as Parties and to Join Claims Against Bertucci and Luhr is DENIED.

Plaintiffs' Motion for Separate Trials is DENIED.

The Parties are ORDERED to file a Joint Status Report on or before **January 5, 2007**. In the Joint Status Report, the Parties shall discuss the status of discovery, whether they intend to file any dispositive motions and, if so, when they will be prepared to file such motions. The parties shall also propose a renewed schedule for completion of discovery,

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge